ORIGINAL
D & F
C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
RUTH FRANCO LOPEZ,

                Plaintiff,          **MEMORANDUM & ORDER**

-against-                                 Case No. 09-CV-3872 (FB)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendants.
------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*
RICHARD P. MORRIS
Klein, Wagner & Morris
277 Broadway, 9th Floor
New York, NY 10007

*For the Defendant:*
LORETTA E. LYNCH, ESQ.
United States Attorney
Eastern District of New York
By:    SETH D. EICHENHOLTZ
         Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

        Ruth Franco Lopez ("Lopez") seeks review of the Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits and supplemental security income (together, "DIB"). Pursuant to Federal Rule of Civil Procedure 12(c), both parties move for judgment on the pleadings.

        Lopez argues that in determining her residual functional capacity ("RFC"), the Commissioner failed to: (A) give her treating physician's opinion about the nature and extent of her impairments conclusive weight; and (B) properly consider Lopez's subjective allegations of pain. For the reasons stated below, the case is remanded for further proceedings.

I

In March 2004, Lopez—a home health attendant—filed an application for DIB, claiming degenerative disc disorder in her lumbar spine, tumors in both her back and brain, and depression. In September 2006, Administrative Law Judge Marilyn P. Hoppenfeld ("ALJ") denied the application. In September 2008, after the Appeals Council remanded for further proceedings,[1] the same ALJ again rejected Lopez's application. The Appeals Council declined review on August 9, 2009, rendering the ALJ's second decision the final decision of the Commissioner; this action followed. The administrative record ("AR") includes both proceedings.

II

In applying the requisite analysis, the ALJ determined with respect to the first four steps that Lopez: (1) "has not engaged in substantial gainful activity since the first alleged onset date of July 16, 2003," AR at 27; (2) "has the following impairments: status post gastric by pass [sic]; status post pituitary adenoma-[Gillian Barre Syndrome] [sic]; low back pain and an alleged depression," *id.*; (3) "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments," *id.* at 29; and (4) "is unable to perform her past relevant work as a home attendant," *id.* at 33. *See* 20 C.F.R. § 404.1520(b)–(f) (setting forth the first four steps of the five-step analysis).

---

[1] The ALJ's decision following the first hearing rejected testimony given by the Commissioner's medical expert that supported Lopez's claim. The Appeals Council remanded for the ALJ to "give further consideration to the medical expert opinion." *See* AR at 93.

At step five, the ALJ determined that Lopez "retained a residual functional capacity for a full range of sedentary work." AR at 29; see 20 C.F.R. 1520(g) (setting forth the fifth step in the five-step analysis). The ALJ then determined, based on the testimony of a vocational expert, that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. at 34. Lopez challenges the ALJ's RFC determination.

## A. Treating Physician's RFC Reports

Lopez first complained of severe lower back pain and weakness in her left leg to Dr. Sixto Caro ("Dr. Caro"), an internist, in July 2001. Through September 2007, Lopez had appointments with Dr. Caro every two to four months. The AR contains five MRIs ordered by Dr. Caro—dated August 2001, October 2001, November 2002, April 2002 and September 2004—revealing degenerative disc disease and a lower back tumor. In addition, the AR contains four MRIs of Lopez's brain—dated October 2001, November 2002, September 2004 and November 2005—showing a pituitary tumor.

In May 2004, after Lopez applied for DIB and in preparation for her first hearing, Dr. Caro completed an RFC report. In his report, Dr. Caro diagnosed Lopez with morbid obesity, hypothyroidism, a pituitary tumor, a lower back tumor, severe lower back pain, degenerative joint disease and general anxiety. He listed the October 2001 and April 2002 MRIs as the bases for his diagnoses of Lopez's lower back problems. Dr. Caro determined that Lopez was "totally disabled," opining that she was unable to climb stairs, squat, crawl, lift more than five pounds, stand or walk for two hours in an eight-hour

workday or sit for six hours. Thus, Dr. Caro's RFC opinion is tantamount to a finding that Lopez was unable to do even sedentary work.[2] Nonetheless, Dr. Caro reported that Lopez's motor skills, manipulation, sensory capacity and mental status were largely normal.

Between February 2005 and April 2006 — in further preparation for Lopez's first hearing — Dr. Caro filled out two one-page "physical capacity evaluations" and two one-page "social security medical assessments." On each form, Dr. Caro repeated his medical opinion from his May 2004 RFC report that Lopez's capacity to frequently lift or carry was limited to five pounds, and that she lacked the capacity to stand or walk and sit for the time required to perform sedentary work; furthermore, Dr. Caro included two new diagnoses: status post Guillain-Barré Syndrome, which left Lopez with residual weakness in her left leg, and status post gastric bypass surgery.

After Lopez's first hearing, and in preparation for her second, Dr. Caro completed a New York City welfare form, dated February 2007, titled "Physician Treatment Plan"; a second RFC report, dated September 2007; and a report, dated May 2008, titled "Physician's Report for Claim of Disability Due to Physical Impairment" ("Physician's Report"). On the welfare form, Dr. Caro listed all his previous diagnoses, and also listed eight medications he had prescribed. Despite stating that Lopez's pituitary

---

[2]Sedentary work — the least rigorous work — requires ability to sit for at least six hours in an eight hour work day and stand or walk for at least two hours. See 20 C.F.R. § 404.1567(a); Social Security Ruling 83-10.

tumor had "resolved with treatment with Bromocryptine," and that an October 2006 MRI[3] of her brain was normal, Dr. Caro checked a box that Lopez was "unable to work for at least 12 months." *Id.* at 383-84. Dr. Caro's September 2007 RFC report repeats all his prior diagnoses, but adds that "patient is worsening," and has an "unsteady gait." *Id.* at 373-74. In that RFC report and the Physician's Report, Dr. Caro reported that Lopez was still unable to stand or walk and sit for the time required to perform sedentary work.

In sum, between May 2004 through May 2008, Dr. Caro consistently stated that Lopez could neither sit for six hours in an eight-hour workday nor stand or walk for two, basing his opinions on numerous examinations of Lopez, occurring every two-to-four months over six years, and results from five MRIs of Lopez's lower spine.

## B. Lopez's Allegations of Pain

Lopez testified at both hearings that severe back pain throughout the day and night prevented her from doing household chores, and that she therefore relied on her three grown children—in 2006, aged 21, 18 and 16—to clean the house, do the laundry and prepare meals; she claimed to spend most of the day sitting or lying down, and when her pain allowed, watching television or reading; she claimed to feel severe pain after sitting for fifteen minutes and felt tired and pain after walking one block; however, she testified that occasionally she went on "quick stroll[s]" with her father, and after the first hearing in 2006 she traveled with her father to the Dominican Republic—her country of origin—to stay with family. She claimed to be unable to travel alone on public transportation; her

---

[3]This MRI is not part of the AR.

daughter always accompanied her. Side effects from prescribed medications caused her dizziness, nausea and vomiting.

### C. ALJ's RFC Determination

In discussing Lopez's physical impairments, the ALJ focused on the November 2002 MRI of Lopez's lumbar spine, the November 2002 and November 2005 MRIs of Lopez's pituitary gland, and the opinions of Dr. Caro and two of the Commissioner's consultative examiners — Dr. Edmund B. Balinberg ("Dr. Balinberg"), an internist, and Dr. Justin Fernando ("Dr. Fernando"), a thoracic surgeon.

Dr. Balinberg rendered a two-page written report, based on a single in-person physical examination in May 2004; he reported that Lopez had "a limited range of motion of the spine," "was limited in performing frequent bending, lifting, carrying and pushing heavy loads," and "had difficulty to sit down and stand up for long periods of time without interruption." *Id.* at 213, 215. Dr. Balinberg did not, however, provide an estimate of how many hours in an eight-hour workday Lopez could sit or stand.

Dr. Fernando rendered a four-page written RFC report, based on a single in-person physical examination in October 2007; it is the only RFC report that contradicted Dr. Caro's RFC reports. Dr. Fernando reported that Lopez "appeared to be in no acute distress," that her "gait [was] normal," and that she could both "rise from [a] chair without difficulty" and "get on and off [the] exam table" without help. *Id.* at 740. Notwithstanding those contradictions, Dr. Fernando reported that "due to pain in her back," Lopez had a "mild limitation for bending and by inference probably limited for lifting, carrying, pushing, and pulling." *Id.* at 741. Dr. Fernando attached to his report the results of an x-

ray of Lopez's lumbosacral spine that showed "[n]o acute bony abnormality." *Id.* at 742. Dr. Fernando did not estimate how many hours out of an eight-hour work day Lopez could sit or stand.

The ALJ determined that Lopez "retained a residual functional capacity for a full range of sedentary work. She was and is capable of sitting for six hours in an eight hour day; standing and walking for two hours in an eight hour day and lifting ten pounds occasionally." *Id.* at 29. The ALJ did not state whether she adopted either of the consultative doctors' opinions, but because her RFC determination conflicts with Dr. Caro's, she necessarily rejected his opinion. Two comments in her decision—one of them wrong and the other ambiguous—are the ALJ's only direct assessments of Dr. Caro's RFC determinations. In summarizing Dr. Caro's May 2004 RFC report, the ALJ stated that Dr. Caro "supplied no examination findings, laboratory tests or symptoms." *Id.* at 30. In fact, Dr. Caro listed in that report the dates and results of the October 2001 and April 2002 MRIs. *See id.* at 199. In addition, after stating that Dr. Caro opined on the New York City welfare form that Lopez was "totally disabled," the ALJ commented that Dr. Caro "supplied no new findings on examination or objective clinical testing," *id.* at 31; however, the ALJ did not explain why new findings would be significant, nor why the old findings were insignificant. The ALJ's only other reasons for concluding that Lopez was physically capable of sedentary work were limited to part of a single paragraph:

> Based on this record, there is [sic] no grounds for the alleged limitations and pain proposed by the claimant. There are no herniations of the spine; there are not [sic] neurological deficits; sensory, motor and deep tendon reflexes were normal; straight leg raising was normal; there was no atrophy and no findings supportive of any back disorder. As far as the 5mm tumor, there has been no objective findings; no need for any operative

7

procedures; no evidence of any growth or residuals therefrom, except being medicated for hypothyroidism. She was cleared medically and mentally for her gastric bypass, which is necessary before they will operate.

*Id.* at 32.

The ALJ's reasons for not crediting Lopez's allegations of pain were largely inaccurate. The ALJ stated that Lopez "maintains a household, raised three children, travels by public transportation, traveled to the Dominican Republic in 2004, went back to work for awhile in 2006; attends church, reads, shops, watches TV., [sic] undisturbed by any significant pain or limitations." *Id.* at 33. Lopez's testimony, however, was that she relied on her grown children to maintain the household, she was unable to travel alone on public transportation, and she was limited in her ability to read and watch television due to pain. Moreover, there is nothing to support the ALJ's statement that Lopez returned to work in 2006. Finally, in addition to stating the wrong year Lopez traveled to the Dominican Republic, the ALJ did not explain why a single trip to see her family was sufficient reason to discredit Lopez's allegations of pain.

### III

In reviewing the Commissioner's decision, "a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence is "more than a mere scintilla," and should be that which "a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court concludes that although Dr. Caro's RFC opinions were not entitled

to controlling weight, the ALJ erred by failing to comprehensively state good reasons — with reference to factors set forth in the regulations — for not crediting Dr. Caro's opinion. The ALJ also erred by failing to properly consider plaintiff's subjective allegations of pain.

### A. The Treating Physician Rule

Pursuant to the treating physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotations and alterations omitted). Dr. Fernando's observations that Lopez was in "no acute distress," her "gait [was] normal," she could "rise from [a] chair without difficulty," and needed no help "getting on and off [the] exam table," along with the x-ray he ordered showing "[n]o acute bony abnormality," are substantial evidence that is inconsistent with Dr. Caro's RFC opinions that Lopez cannot stand or walk and sit for the time required to perform sedentary work. Thus, Dr. Caro's opinion is not entitled to controlling weight.

If the treating physician's opinion is not given controlling weight because it is inconsistent with other substantial evidence, "the regulations require the ALJ to consider several factors in determining how much weight it should receive." *Burgess*, 537 F.3d at 129; *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Those factors are: (1) the "length of treatment relationship" and "frequency of examination"; (2) the "nature and extent of the

9

treatment relationship"; (3) "evidence [supporting] an opinion, particularly medical signs and laboratory findings"; (4) consistency "with the record as a whole"; and (5) whether the physician is a specialist in the field at issue. 20 C.F.R. § 404.1527(d)(2)-(5). After considering those factors, "the ALJ must *comprehensively* set forth [] reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (emphasis added); *see also* 20 C.F.R. § 404.1527(d)(2) ("We will always give *good reasons* in our notice of determination or decision for the weight we give your treating source's opinion.") (emphasis added). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell*, 177 F.3d at 133; *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

Because several of the factors weigh in favor of crediting Dr. Caro's RFC determinations, the ALJ's failure to provide good reasons requires remand. In *Burgess*, for example, the court remanded because the ALJ did not consider an MRI report that was supportive of the treating physician's RFC determination. *See Burgess*, 537 F.3d at 132 ("On remand, Burgess is entitled to express consideration of the MRI Report as to her back and of [her treating physician's] explanation of the report's findings . . . ."). Here, the ALJ failed to give reasons why she did or did not consider *five* MRIs supportive of Lopez's severe

10

lower back pain and Dr. Caro's RFC determinations. Indeed, her reasons for rejecting Dr. Caro's RFC opinions, including her statements that Dr. Caro "supplied no examination findings [or] laboratory tests" with his first RFC report, and that there are "no findings supportive of any back disorder," evince the ALJ's abject failure to give weight to the MRIs, without explanation.

Moreover, Dr. Caro provided the consistent opinion during his six-year treating relationship with Lopez — during which they had appointments every two-to-four months — that she could neither sit for six hours per eight-hour workday nor stand for two; therefore, three other factors — length, extent, and nature of the treating relationship — weigh in favor of crediting Dr. Caro's opinion. The ALJ was required to give good reasons why she gave greater weight to the opinion of Dr. Fernando, who met with Lopez on a single occasion, especially because Dr. Balinberg's opinion was consistent in a number of respects with Dr. Caro's.

### B. Lopez's Allegations of Pain

In determining how claimants' subjective allegations of pain affect their RFC determinations, the regulations require an ALJ to first determine whether the medical signs or laboratory findings show that the claimant has "a medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms, such as pain." 20 C.F.R. § 404.1529(c)(1). If so, the ALJ must then consider "all of the available evidence,"

using factors listed in 20 C.F.R. § 404.1529(c)(2)–(4),[4] to determine the "extent to which [the claimant's] symptoms limit [the claimant's] capacity for work." *Id.* Although the ALJ determined at the first step that "the claimant's medically determinable impairments could not reasonably be expected to produce the alleged symptoms," she nonetheless addressed the second step, stating that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not supported by the substantial medical evidence and not accepted." AR at 29.

The ALJ's determination at the first step was wrong because the MRIs constituted objective evidence that Lopez had a medically determinable impairment that could reasonably be expected to produce her pain. *Cf. Pourpore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (affirming denial of benefits where claimant's "subjective complaints were *unsupported* by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the symptoms alleged") (emphasis added). Thus, on remand, the ALJ must either accept the MRIs as supporting a medically determinable impairment, or explain why they were disregarded.

After determining that Lopez did not have a medically determinable

---

[4]They are: (1) daily activities; (2) the location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)–(vii).

impairment, the ALJ should not have addressed step two. *See* 20 C.F.R. § 404.1529(b) ("[S]ymptoms, such as pain ... will not be found to affect [a claimant's] ability to do basic work activities *unless* medical signs or laboratory findings show that a medically determinable impairment(s) is present.") (emphasis added). In addressing step two, however, the ALJ did not sufficiently explain her reasons for discrediting Lopez's testimony about her pain in relation to the factors listed in 20 C.F.R. § 404.1529(c)(2)–(4).

The ALJ only addressed one factor—"daily activities"—and she misrepresented Lopez's testimony. Inexplicably, the ALJ stated that Lopez "maintains a household" and "raised three children," as purported reasons for discrediting her testimony, but did not explain why she rejected Lopez's testimony that her children do the household chores because pain *prevents* her from maintaining a household, nor did the ALJ explain why raising three children *in the past* is evidence that Lopez is not in pain *now*. Further, the ALJ did not explain why she ignored Lopez's testimony that pain limited her ability to read, watch television and travel alone on public transportation; nor did the ALJ explain the significance of a single trip to Lopez's country of origin to visit family. In addition, the ALJ provided no basis for her statement that Lopez "went back to work for awhile in 2006." Thus, if on remand the ALJ reaches the second step of the subjective pain analysis, she must further explore the factors listed in 20 C.F.R. § 404.1529(c)(2)–(4) to support her reasoning.

## C. Obligation to Develop the Record

Finally, the ALJ "generally has an affirmative obligation to develop the

administrative record," *Burgess*, 537 F.3d at 128, and the most recent MRI of Lopez's lower spine is from September 2004, before her first hearing. A more recent MRI and updated medical records would be helpful to determine the current state of Lopez's back problems.

## CONCLUSION

The plaintiff's motion is granted. The case is remanded to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED.**

s/Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 8, 2010